We'll hear Amado v. Microsoft, number 071236. Everybody can give the council a moment to clear out. Very well, Mr. Belusco, when you're ready. The primary issue on this appeal is straightforward. What price should Microsoft pay for the use of the invention during the stay pending appeal? $2.12. At the time the injunction was ordered by the district court. Microsoft has a third number. Maybe a fourth. Well, at the time the injunction was ordered and stayed, the district court set the price at $2. And the rationale that was used was, first, that it was post-judgment. But that was an amount determined to be placed in escrow. Yes, it was, Your Honor. And that escrow, and I think it's very important to look at the order on that, was contemplated to be a reasonable royalty. So it was to bear some relationship, close relationship, to what was ultimately to be provided if conditions subsequent was met. Well, we resolved that on the last appeal, did we not? You resolved the issue that the collection of $2.00 was not an abuse of discretion whatsoever. And so the issue now is it was sent back for one thing only. The mandate encompassed everything else. All liability was done. All damages were done. It was but one issue. And if you look at what the court did in that first order, talking about its rationale, and that's at appendix 1124, line 27, to 1125, line 7, that rationale was, I want to admit there is a right to exclude here, because there was an injunction. I'm going to value that in some way, and I'm going to try to mimic the marketplace. And that's exactly what the district court did by setting it at $2.00, because it put Microsoft in the position. You can pay $2.00, continue to use it, pending appeal, or you can use what they claimed was a readily available design around and not pay anything. Take it or leave it. Just like if you or I went to the store and there's an item on the shelf that has a price, you can either take it for that price or leave it. Now, after this court affirmed, in all respects, the judgment below. Didn't the district court judge also say, well, maybe the parties will settle in the meanwhile? Yes. And that's something that didn't happen either, Your Honor. But if $2.00 was absolute lockdown minimum that your client could ever get, what would there be any incentive to settle? Well, Your Honor, I don't know that it was. There would be incentive. Hold on. Microsoft, you want to ask for more? No. The incentive. So what's the settlement negotiation going to be when you say, well, we've got an absolute lockdown, $2.00. Can't be less than that. Microsoft, would you like to pay us $3.00? Well, the settlement was before the injunction, Your Honor, or excuse me, before the first appeal. There was uncertainty imposed on all the parties at that point. Maybe I misunderstood. I read the trial judge when he put the $2.00 down and said, that's the number in escrow for acts of infringement during the appeal period. Maybe the parties will sort of settle. So he puts $2.00 up, which is quite a lot higher. The jury got $0.04, right? So to go from $0.04 per unit to $2.00 a unit is like gargantuan change. So I would have thought that what the trial judge had in mind when he said the $2.00 was to say to Microsoft, you better start thinking about settling somewhere north of $0.04 and south of $2.00. And that's the incentive. That's a little quip. I think that the trial judge thought that was a possibility. But Microsoft didn't choose to choose that. I'm just offering that. I'm just saying that was my take, and I could very well have been wrong in my take on the record. But that's why I think that there was less certainty in the trial judge's mind that he had figured the exact, proper, correct lockdown ongoing royalty and saying it's $2.00 and nothing less. Because I don't think he'd have been talking about trying to urge a settlement pending the appeal if the $2.00 figure was for real in his mind. Well, I think, though, that the uncertainty of what would happen on the appeal is what changes that. And this Court has already ruled that the collection of $2.00 was not an abuse of discretion. So I don't see how there can be any problem with the distribution of $2.00 either. What's important here is after— Well, but it goes back, in essence, to what I was saying. We don't know from the rather short opinion of the Court when the case was here before whether the Court that was sat on this before was looking at that $2.00 figure as I just expressed that I tend to look at it. In which case, the Court approves a $2.00 figure which was thrown down on the table in order to hopefully force some parties into a negotiation. But, Your Honor, the Court did say that was a reasonable number. Very specifically, and it says reasonable because that is what Amado had asked for throughout the litigation. And there was plenty of evidence in the record to support the $2.00 as far as— Certainly suggested that the jury verdict was unreasonable, right? If $2.00 is a reasonable number. So we're confronted, Your Honor, then with an attempt being made to mimic the market and to give value to a right to exclude, which this Court then affirmed in terms of the injunction was appropriate because that became part of the mandate, clearly. And it goes back now with the injunction appropriate, and the District Court now misapplies the eBay decision and acts like there was no right to exclude throughout this period that had been stayed. Instead, looking at things anew and acting like, well, there wouldn't have been an injunction, so now I'm going to go reprice things here. Is there a difference between prospective application of injunctive relief and retrospective application, if you will? In other words, is there a difference between the determination of the disposition of funds held in escrow during the stay as compared with the effect of the injunction prospectively? And why didn't the District Court have authority under its equitable powers to re-evaluate the propriety of an injunction prospectively? Well, let's start with, is there a difference, prospective versus retroactive? Well, I certainly think there is retroactive. It is much different than prospective in terms of looking at things. But what are the facts here in terms of the market? The market justifies the $2, and how does it do that? Microsoft doesn't come out with its readily available fix in the time frame that they said they would with the Court, but delay it. Rather, keep paying $2. Microsoft loses the appeal here, and what do they do to try to continue the stay going longer, and the ability just to pay $2, not to have to stop? They first, they file a petition for re-hearing, re-hearing on bond, that delays the mandate. They then file a motion to stay the mandate, which was denied. Then, they go ahead and wait until the last possible day to file a cert petition, which was predictably denied, to further stay the effect of this injunction coming back into place, which it was supposed to do seven days after the conclusion of the appeal. And then, with time all gone, they go back yet to the District Court and seek ex parte relief, and say that they've got to have it continued longer. So, to Microsoft- Why do all of those, what you would view to be delaying tactics, why do they indicate some Microsoft that it thinks the $2 rate is a market rate? Because they were willing to put all that money into escrow. Throughout that time- That amount of money, I don't think that amount of money broke Microsoft Bank, did it? I mean, it broke that check out of petty cash. That may well be the case, but you do it for a sound business reason, because throughout that 19-month period, they sold $10 billion worth of infringing product. And they knew that they would have to pay a fee for each of those infringing licenses. And they were willing to pay that $2 if it came to that. What I'm suggesting is- They don't seem to suggest that they were willing to pay that $2. Well, they paid it into the escrow, which was risk. When we sent the case back, we left open the disposition of funds from the escrow, right? Yes, you did. So, what could have been in the minds of the court when we said, we leave open disposition of funds from the escrow? Was that solely going to be for the amount of licenses? Well, there's- What was the open issue from the point of view of our court when we sent the remit? Well- We should know better than you. And I'm sure Judge Lynn knows a lot better than I do. But be that as it may, the problem with the way that the injunction was set up in this sense is that the escrow period would go beyond the conclusion of the appeal. So even when the appeal was done, the amount in escrow hadn't finally been determined. If there'd never been a so-called fix, the escrow period would still be going on, right? For as long as Microsoft wants to sell product that you think is infringing. No, no. As we point out well in the papers, this escrow period should have ended on December 3rd, 2006. Because when the mandate issued from this court- But that's tied up with your argument about there shouldn't have been continuances and continuances. Assume you lost all those wasn't it? Well, I guess if they're permitted to make those arguments, but I suggest to the court that those arguments are not well stated because by the very terms of this injunction, the mandate came into play and you can't- The district court wasn't allowed to change the terms of those injunctions based on a non-intervening decision. And eBay, whatever it is, has nothing to do with occurred before the first oral argument here. But after the district court had ruled on the request for an injunction. Absolutely. As far as the district court is concerned, eBay is new matter. But your honor, as far as the mandate is concerned, it is not new matter. And moreover, the Ninth Circuit has pointed out that the way you deal with that is you bring up eBay as Rule 60. You ask for supplemental briefing in this case. You move to stay. There are a multitude of ways There are a multitude of ways, but the question is if you don't use one of those, does that foreclose the judge from exercising what in equity is almost invariably regarded as being open to the judge, which is to reconsider the propriety and wisdom of injunctive relief? Yes. Yes, it does? Yes, it is foreclosed here because you can't come into this court and argue eBay on one issue as they did in the first appeal and then say I'm preserving eBay for another issue depending how things turn out in this court. You can't come in and argue eBay in connection with your motion for stay of the issuance of the mandate, lose on that issue, and then say I get to bring it up later. But they were arguing eBay on the ground that they wanted, they believed that eBay would ultimately give them relief in the district court and that we shouldn't foreclose that. I mean, I don't see an inconsistency there. No, I think though that once this court determined that the mandate should issue, which assumes within it under the Engle case, all issues properly that are in the scope of the orders appealed from, including that injunction, that was the end of it. So your view then, if there had never been an appeal in this case, but eBay had come out a month after the court could have gone back and said, you know what, I made a mistake, I want to reconsider, upon motion, I want to reconsider the injunction. But once there's an appeal, that even though the appeal does not specifically address the question of the propriety of the injunction under eBay or anything else, that sort of locks the district court out of being able to make the adjustment in question. My position, your honor, is that once the mandate issued from this court and eBay had preceded it and been raised in various ways, that that locked out the district court. Are you answering my question by saying yes? I'm not sure. Sometimes when I ask a question and somebody says, well, my position is X, I'm actually looking for yes or no. Okay, your honor, I think it is yes, that the event that locks them out is the mandate of this court, which the district court is bound by, cannot now go re-look at that. So even if, and what you're saying in effect, I think, is the mandate rule prohibits the district court from reconsidering any aspect of the judgment, even if, and to the extent that, some aspects of the judgment were not specifically addressed on appeal, raised or addressed. Specifically in this instance under Engel, yes, your honor, because they are the ones that appealed first. They appealed two orders. They appealed the judgment. Are there any exceptions to the mandate rule? Well, clearly there are, if indeed, for example, the intervening decision had arisen after this court's mandate of August, that would be an exception. The other sections this court has recognized have been in construing the mandate when the non-appealing party has, you know, like the Exxon case or the late-term case where it's the non-appealing party and it's something not done. In this case, very clear under Engel, that the universe is everything within the scope of those original judgments, less what was specifically sent back. Is there a difference in the injunction as opposed to other parts of a judgment? Now, obviously, the mandate rule would normally foreclose reconsidering all issues subsumed within the judgment and addressed in that judgment on appeal. But to the extent that the injunction is not just a judgment, it doesn't say, okay, you win and you pay a certain amount of money. It says you win, pay a certain amount of money, and there is an ongoing obligation not to make use and sell. And typically, injunctions are always subject to equitable and continuing oversight by the district court. Of course. But your position is that the mandate rule not only forecloses the district court from revisiting the judgment in its entirety, but also forecloses it from reconsidering an argument with respect to the injunction that could have been raised before the court of appeals and wasn't. That is correct. Even though this is prospective conduct. Yes. But particularly, it does so with respect to what is retrospective now as to the amount of the royalty that should be paid. Well, I'm just talking now about the vacatur of the injunction. And I realized that maybe the amount is a different, slightly different subject. But in ongoing equitable remedy, is the district court, was the district court foreclosed from taking another look and applying eBay, which of course wasn't before it before it considered the injunction in the first place? Yes. Because the changed circumstances must be changed circumstances post mandate. And you think that that applies to any form of equitable relief, I take it? Yes. Okay. So in other words, if we have, let's say a district court, not in a patent case, but a district court enters a broad equitable order governing the application of 1983 claims as to a prison medical provision of medicine, medical care in a prison. The case goes up to Court of Appeals. And while it's pending in the Court of Appeals, the Supreme Court decides a case, which bears importantly on that question. But the Court of Appeals nonetheless says, well, so far as it goes, the district court's order challenged in a few minor respects is hereby affirmed. The district court at that point can't go back in light of the Supreme Court's decision and say, the Supreme Court has really changed the whole basis for this. And therefore, for the rest of time, because that order was open-ended, it wasn't limited to 17 years or anything else. For the rest of time, that order is fixed. Yes. Okay. I believe that is correct. That's a clear answer. Because it is. Those changed circumstances occur after or before the mandate issue, and they're not allowed to be used. There are a lot of things that could be done, so you would never get into that situation. All right. Very well. Why don't we restore your rebuttal time. Why don't we hear from your opposing counsel, Mr. McAuley? McAuliffe. McAuliffe. All right. Thank you, Your Honor. Joe McAuliffe from R.M. Porter. I represent Microsoft Corporation. May it please the Court, in this case, the district court punished Microsoft for the finding of willful infringement after inviting Microsoft to continue those very sales that underlie that finding, and without giving Microsoft even notice that it might be punished or a chance to be heard on that punishment. That is error. And that is enough error to reverse the motto's brief on this issue. He never mentions willfulness once. And I hope the Court stops and thinks about that in this case. He never even says this is a litigant who unsuccessfully charged Microsoft with contempt several times, asked for sanctions almost every time he filed a paper, and he never even argued that our post-trial sales were willful. Never even argued it. The district court never mentioned it in the orders it issued setting up the scheduling for the motions. But the post-trial sales were sales that took place after a judgment of infringement. Indeed. And after an injunction was staked because the district court found that if Microsoft stopped those sales, there was a massive threat of significant harm to third parties and to the public. And the district court, again, from us the last time, had to reassess, or not reassess, but really to determine the disposition of the funds that were put in escrow as a condition for your stay. Indeed, it certainly did. And it reassessed, or it assessed that by looking at the fact that there was a judgment rendered and then there were sales that continued following that judgment and used as a measure the royalty determination made by the jury and used a trebling factor paralleling willfulness. There wasn't any determination of willfulness, but I'm not sure that that was necessary. I don't think that's what happened. I think it did. It did find that we were willful without giving us any notice and tripled what the jury had found. Now, if it did what you were suggesting it did, your honor, that it used the intent of the defendant in coming to a value of the invention, that would be unprecedented. There's not an opinion of this court, as far as I know, that has ever said that in a reasonable royalty case, the court can look at what the hypothetical negotiation was supposed to take place and look at the state of mind of the defendant and take that into account in valuing the invention. But aside from that, the Supreme Court has now made it pretty clear that willfulness is punishment. When you enhance damages based on willfulness, it's punishment. So if the district court is going to use that as part of the calculus of coming to the evaluation, it's no less punishment to look at our activity and say you're being willful. We'd have a very different case here on this issue, wouldn't we not, counselor, if instead of referring to willfulness, as the trial judge did, the trial judge had said, well, I don't think two dollars is the right answer. That's far too high. I don't think four cents is the right answer because I think for post-verdict infringement, the patentee would probably be looking to get something more than what the reasonable royalty would have been. So I just think 12 cents looks about right to me. The trial judge had said that. Now, what basis would you oppose that 12 cent? Well, it's still the error. Take away your willfulness challenge. It would still be error because there's no basis in the record for that. A discretion isn't unlimited. The court still has to point to something to support that number. The only evidence in the record before it was the four cents that the jury awarded and the fact that Microsoft had— Have we said that in pace? What did we say in pace that the trial judge was supposed to do on the remand when we threw out, what was it, the $25 per unit ongoing royalty? I forget specifically. I think we just said as a matter of equity, you decide. But not without evidence. In eBay, the Supreme Court noted that discretion is not unlimited. There still has to be something on which to base it. And I'd like to point out that here— But here, there was a basis. There was a basis. The trial court said, well, I'm going to look at what the jury awarded and I'm going to look at the fact that during this period of time, Microsoft was permitted to do what we had already determined was an infringement. And it simply, as a matter of reason, said, well, I think troubling it is an appropriate amount. It's similar to what the limit would be if there was a willfulness determination and this was Microsoft's deliberate act. It decided freely that it was going to continue. Oh, it did more than that. The district court found willfulness. And it also invited Microsoft to make those decisions. But what's wrong with that? There was a certain willful component here. Oh, I think not, Your Honor. I think, first of all, all of Microsoft's activity is completely reasonable. Probably just like your point on the willfulness point. I think you said when you got up was to say, well, you know, when the court says, here's an escrow, put money into it, go ahead and sell licenses. But the court is saying, you have a pass to sell the licenses. You're just going to have to pay either two bucks or some other figure. We'll determine that later for what it was. I think that's right. But then going forward and saying, by the way, I'm going to punish you for doing it and for saving that harm that I have found would occur if you didn't do it, that's extraordinary. What would not have been punishment? Five cents? I think four cents would not have been. And I'm not suggesting that a court can never depart from what the jury says, although I would suggest that this, I don't think this court has adopted a rule on this. And I would suggest there should be a presumption. Why aren't you asking for a remand? Both sides have sort of gone mano a mano. We've got the $2 party and we've got the four cent party. And if you're right that the 12 cents was wrong because it was dialed on a willful infringement analysis that can't stand under Seagate pretty clear, I don't see why you wouldn't be saying, well, let's have a remand. Let's have a hearing at which the trial judge can listen to both sides, listen to what the judge thinks he's fairly entitled to post-verdict and have Microsoft say what they're entitled to and form a record and then have the judge pump a number up. And if you don't like it, come back up again. Why are you resisting a remand? I'm not resisting a remand. I think it was your... Both sides in your paper said you don't need a remand. This is a $2 or a four center. Well, I think there's evidence in the record that supports four cents, obviously, right? There's evidence in the record to support $2 too. Oh, I don't think so. I don't think so. None? There was never any evidence. The evidence he had was rejected squarely by the jury, rejected by the district court on Jay. No, no, but we're talking about evidence. We're talking about what might have been evidence in front of the trial judge, but the trial judge could pick that larger figure. Maybe the trial judge picked the two bucks thinking, I'm using it as a goad to get Microsoft to settle. But guess what? If they don't settle, they're going to pay the two bucks. That may have been in the back of his head, but let me tell you what really happened. Mr. Belusco argued that the trial judge didn't have any authority to do anything except $2. This was pre-ebay. And in order to not decide that issue, the court ordered $2 into the escrow and figured, I'll let it go to the federal circuit and then I'll deal with that. What was the basis for the other side saying that the number had to be two bucks? That was what they presented to the jury, which their expert admitted was unrelated to the value. This is after they've had a verdict that says that $2 is not the right number? That's right. That's right. And after it had been rejected on J Maul, rejected on the accounting, and then later, of course, this court rejected it too. There's no evidence to support $2. In fact, that the mandate rule does, I think, settle because they appealed that to this court in the first appeal. And this court affirmed the district courts and the jury's rejection of the $2. With respect to the mandate rule, of course, Amato is arguing that the mandate rule should have foreclosed the district court from revisiting the grant of the injunction. And their argument, as I understand it, is that eBay was not an intervening decision because eBay was a decision that came out while the appeal was pending and before the mandate was issued. And, of course, the mandate did deal with the only judgment that was in issue was the judgment that contained the injunction as well as the other provisions of the verdict. So I guess my question is why are you not foreclosed from asserting changed circumstances when there were no changed circumstances following the issuance of the mandate? Well, this is clearly classic case of an intervening change in the law. We couldn't have made that argument on appeal or to the district court. eBay came down after all the briefing was done. And my mention of it in response to a question from the court about how extreme the right to exclude is or the scope of the right to exclude doesn't mean that I was arguing. Besides that, who were you suggesting that you could not have raised when you were queried at the oral argument about the effect of the eBay decision? You're saying you were barred from saying, yes, indeed, I do believe that eBay is pertinent. And I think what you've got to do, Federal Circuit, is vacate the permanent injunction and send the case back and let the trial judge review his equitable authority under eBay. Can you tell me you couldn't have made that argument to the previous panel? Well, I might have been able to make it with some trepidation that I would be. Why? Because I didn't have that argument to appeal in the first place. And so it wasn't before the court. Well, you'd have been better off, of course, if you'd made it and they told you you couldn't raise that issue because the rules of the court are the rules of the court. The issues that this court is willing to hear are in the notice of appeal. We allow you to file supplemental authority to your briefs, right? Legal authority, supplemental authority, we file it in a little blue piece of paper when it comes to us. And all the time we receive from counsel that cases have been come down from the Supreme Court that came down after the briefing was concluded and they submit that material to the court and the court considers it. But the propriety of the injunction wasn't before the court. And I think if I had used Rule 28 to raise the propriety of the injunction or any other new issue, I think I would have been better off. You mean the propriety of the injunction wasn't before the court because you didn't appeal? Yeah, because I didn't have the argument. I didn't have the irreparable harm argument to appeal. Of course you had it. eBay had it. No, I didn't have it when I filed the notice of appeal. Sure you did. eBay did. eBay had it before eBay was decided. I mean, you could have preserved the issue. You just didn't. Well, at the time eBay, the decision of this case in eBay was the law. Sure. And so that had been rejected. Well, you file a piece of paper saying with all due respect, the issue is on appeal in the Supreme Court. We fervently believe that or we think the Supreme Court is going to reverse you. We want to preserve the issue. I might have been able, I could have certainly filed that paper. On the other hand, this was a state injunction that might be mooted by the other issues on appeal. So it seemed appropriate given the time that most judges have and their responsibilities to let this. Well, does it matter that the post event here was from the Supreme Court? I mean, we're actually, well, we have here, well, what we have here is the Supreme Court decides a case, right? And suggest that the Federal Circuit has had a rule in place for a long time that sort of provides automatic permanent injunctions in patent infringement cases. And they say, well, whatever the case is, that rule's out. You've got to, whatever that was, you've got to go do it again. That's the Does it matter for purposes of exceptions to the mandate rule, for example, that it's the Supreme Court that's talking? No, I'm not so sure it does. The cases from this court that I've read have never made that distinction. It is intervening change in the law as an exception to the mandate rule. I'm not so sure how it's relevant here either, because for me that is a Supreme Court opinion. And there's no question that there's no irreparable harm. Mr. Amato doesn't make anything out of the patent. He admitted at trial that he gave up even trying to commercialize anything out of the patent years before trial. He doesn't compete with Microsoft. Any harm he experiences from infringement will be remedied by monetary measures. In this case, of course, we did raise the question of eBay and whether you were challenging the injunction based on eBay at the oral argument last time. And even though you didn't file a motion for leave to amend the notice of appeal or to amend your brief to assert the issue and challenge the injunction, when the decision was released from our court, the decision affirmed the judgment in all respects. And the judgment includes the injunction. And there was not even a request in the petition for rehearing to reconsider or carve out an exception or please leave the door open for the district court to reconsider the injunction. There was nothing. Why isn't that a waiver if there wasn't a waiver before that? Well, I think that would have been inappropriate under the rules. I don't see how it could be a waiver if I wasn't permitted to make the argument under the rules. And also because the district court, I think, retains- But you could have argued there was an intervening change in the law and that, therefore, the court of appeals' affirmance should not foreclose your right to challenge that at the district court. But you didn't. Oh, I made that argument at the district court. Of course. Yeah, you're right. I didn't do it in a special motion or a petition here. But that's because that issue wasn't before the court. So I went to the court when the issue was still up. But the judgment was before the court. The judgment was, but the juror- And the judgment includes the injunction. This judgment supports the injunction. I think that's right. Weren't the terms of the injunction contained in the judgment? I believe it was the same word, yes. Yes, that's right. But again, it was a state injunction. And it was something that was not appealed to this court. It was a state, but it was an injunction. I mean, it was a state pending appeal. The injunction had been granted. That's true. That's true. But in the rules of this court, there's no provision for raising these new issues. And I've seen many opinions that litigants have been, I don't want to say not punished, but told not to do that. I think it's a fair reading of the court's rules that one can't just raise new issues. Now there's a separate question of waiver that's raised with respect to the foreign sales issue where the Microsoft case, AT&T, I guess, Microsoft case was pending in the Supreme Court. Microsoft, your client, was a party in that case. But I take it you did not raise that issue before the district court? No, the AT&T versus Microsoft case had not been decided. I understand that. But once again, it was out there and you were obviously aware of it. We were aware of it. Why not say to the district court in the event that that case is decided this way, we are entitled to a substantial reduction in the otherwise four cents for all sales worldwide? Well, you know, your honor, that issue had come up to this court, I think, three times before that, and had gotten exactly the other. But you were before the Supreme Court. So you had to say this was not a frivolous, trivial chance of winning. No, it was not a frivolous chance of winning. It turns out that you did win. But I think to ask a litigant to put in a paper in the district court with every potential, even just those before the Supreme Court, or this court, every potential change in the law, even where the question is settled and has been settled by several appellate court opinions, is perhaps asking too much. These district judges don't want to hear me say, if the Supreme Court does this, here's my argument. If the federal circuit does that, here's my argument. The list could go on and on. In olden days, we used to just call it reserving a point for appeal. And you sort of wrote it on a piece of paper and gave it to the judge's clerk and said, don't even tell the judge about this. Don't bother him. We're just perfecting our record. And the Supreme Court could have adopted a jurisprudence that required that. But it did not. In Harper v. Virginia, it said that when it decides something like AT&T, it must be applied to issues still open on appeal, on direct review. If raised. Yes, and we do. If raised, but it has to be raised properly from the beginning. Nobody did say that, Your Honor. I don't think Harper v. Virginia said that. But that's the predicate for all of that line of cases, the retroactive application cases. They don't say, well, you can just sort of waltz in at the last minute without having ever raised the issue and raise it for the first time in an appellate court. There may be circumstances in which you can get away with raising something for the first time in an appellate court. But typically, you have to raise it, even if it's not a matter that has now been resolved in your favor at the time you raise it. Typically, indeed. But the exception to that is Harper v. West Virginia. And while the predicate of those cases, I'm not sure what your honor is. Harper v. Virginia, is that the? That's the most recent statement by the Supreme Court, it's cited in our briefs, retroactive application of federal law in civil cases. And it doesn't say anything about, oh, you had to have raised it in the district court. It says, if it's an open issue on direct review, then the lower courts are required to apply the new law. And in this case, we raised it in our AT&T v. Microsoft. We raised it in our notice of appeal in our briefs here, because the timing of that decision was such that we could do it, unlike eBay. And so I think this court is bound to apply to AT&T v. Microsoft, or remand, or either apply it directly, because the numbers, it's just algebra, it's in the record, or remand. You assert in your brief that the foreign licenses in this case are on all four with the foreign licenses in the Paradigm case. But we don't really know. We assume you're telling the truth, but we don't know that as a fact. Well, there's no argument there. I'd say you wouldn't object to a remand of the district court that gave you the benefit of the Supreme Court decision, but said the Supreme District Court has to assure itself that the foreign licenses here are similar to the foreign licenses in the main case. No, I don't object, but I would point this out. One of the issues in the first appeal was that direct infringement of this claim does not occur until the software is installed on a computer. That was a claim interpretation issue that was appealed and affirmed by this court. Given that interpretation, it would seem that software that's exported to foreign countries couldn't result in a direct infringement until it's actually installed somewhere on a computer, and there's no evidence that those sales are then re-imported and installed. But as far as the remand, no, as we said in our brief, we think the court can just do the math, but a remand is also... If you were sitting as a United States District Court judge and you were told that you had the authority to dial up an ongoing royalty, and you had a jury verdict that had delivered to the patentee a royalty for past infringement of some sum, what would you, sitting in equity, sir, what considerations would you use to decide what the proper ongoing royalty should be? Well, I would look first to the jury, to the jury award, and that's what I was about to say. I think the court ought to say that there's a presumption that the jury award is... It's a rebuttable presumption that the jury award is the appropriate place to be. And then I think probably a number of circumstances could be relevant, but here's one. What kind of testimony would you call for if you were the District Court judge? Well, I would call for testimony about what the defendant did to remedy the infringement. And here, it's undisputed that the next version of Microsoft software, which, by the way, is the only version... So what did the defendant do to remedy? If the defendant was a real good fellow and managed real quick to fix the infringement, would you then suggest that there should be a... Taking some, taking one cent away from the jury award? Yeah, I would suggest a diminution. You're suggesting that factor would be taken away? Based on the... This court has stated several times that while the de minimis nature of infringement may not be a defense to infringement, it is relevant to the... Are there any factors the trial judge would consider that could, on this hypothetical we're using, increase the four cents? I think in one of the cases cited by Amato, the trial judge warned... There was no finding of irreparable harm, but then the trial judge warned the defendant that if they kept selling, they might be subject to enhanced damages. Now, it's very different from here, where the trial judge says, please keep selling to protect the public. But in that sort of situation, I think the trial judge may be able to take that into account. See, I'm over my time. Yes, thank you. I think we'll need to move on. Thank you. Thank you. We'll give Mr. Belisco a little extra time. What do you have? Four minutes? Why don't we give you an extra two minutes in case you need it? Okay. Thank you very much. Let's start with the last issue raised. As far as the district court asking Microsoft to continue to infringe, I don't think the district court asked Microsoft to continue to infringe. Rather, it thought that they were going to stop that soon. I think your bot case deals with the fact that there's a stay of an injunction. It's not licensed to do anything, and the finding of willfulness there. There's also the mention, oh, we never got any notice about this, which erased the nursery plot. I do want to point out- What is the consequence of a stay of the injunction if it doesn't contemplate a continuation of activity? Well, it may contemplate a continuation of activity- The activity presumably has to violate what the injunction would have prohibited, or there's no need for the stay. Right. I would say at one's risk. I think that here, the risk was $2 a unit. If I had come in here and said, oh, I want to have three times $2 a unit, well, I think that I can understand is outside the- We're talking about the willfulness, I think, on this issue. His argument, as I understand it, Mr. McAuliffe's argument, is that the judge basically said you're going to have to pay to infringe during the pendency of the stay. Right. And they did it, and now he said, well, you were willful in infringing. Well, I think as Judge Cleverly pointed out, that the fact is that anything under $2 or less, they can't really complain about. Well, set that argument aside. I understand that's your principal argument, but if you accept, as the district judge did, $0.04 is the baseline number, then what's the justification for going to $0.12 as willful in light of the stay? Well, first off, during the July 2005 hearing, the district court pointed out, and I quote, and I apologize, this isn't in the appendix sites because this is to their survey reply, if Microsoft continues its transgression, I would expect another lawsuit, and there you would probably prevail quite easily on willfulness. So the idea of willfulness was, in fact, raised by the district court here. Also, as far as where it's coming from, as far as the $0.04, I don't agree that they could start at $0.04. I understand, but that's sort of the premise of the argument that Mr. McAuliffe was making,  is there a problem with the argument? I think there is, in view of this court's PACE decision, as I understand it, because bottom line is... I'm talking about the willfulness argument now. Right. Well, but I'm saying that... Seagate's the problem, right? Well, I think Seagate's the problem, but I think that in the face of a case that's been affirmed as to infringement and going forward in the face of that, that is willfulness, plain and simple. There's no objective, reasonable stance that can be used to support that. If I may, though, I'd like to talk about this intervening. I hear the mantra that, oh, it's clearly PACE intervening, intervening, intervening. I can't find one case that's ever held that something occurring before the mandate is intervening. I, of course, did provide you in a circuit case that confronted the timing quite interestingly in the pediatric specialty case where the appellate decision was one day, 10 days later as a Supreme Court, and a mandate issued after that. And they basically pointed out, I think as Judge Lynn's pointing out, well, you had 14 days after the issue to raise a petition for rehearing, rehearing on bonk. You didn't do that, and it's not intervening because it's not after the mandate. Now, suppose that eBay had been decided on the day that it was, and the case had been briefed and argued as it was, and we did get a 28-J letter which said, I want to raise this whole new issue as to the invalidity of the injunction. I cannot conceive that you wouldn't have come in citing a bunch of our cases and said, you can't do that. You didn't raise that before. You can't raise it now. And presumably, we would have said, that's right. Well, I think that the proper thing to do is in the first instance, is the Ninth Circuit, and I think the regional circuit law applies here, was to file a Rule 60 motion in the district court. You could have moved to stay here, could have brought a motion to do that. In addition- Of course, a 60-B motion in the district court while the notice of appeal is pending would be the district court wouldn't have jurisdiction. Well, the Ninth Circuit says that's what you should do. Well, but then the district court has to say, well, if the Court of Appeals will remand to me, I mean, it's a very elaborate procedure and it's not the easiest road to follow. But I guess where I'm going with this is, and I want your answer on this, is whether had Microsoft raised the issue in a 28-J letter saying, I want to raise this as a new issue, and we had said, no, you can't, would they then be able to go back? Would they then be free to go back to the district court? Would they have sort of cleared the way that the mandate rule, as you see it, otherwise would bar them? Well, they'd certainly be in a better position, but as pointed out by this court, there were things they could have done in the petition for rehearing. Well, let's assume that they did exactly what Judge Bryson said, and they then went back to the district court and said to the district court, do what they did, and they did it. Wouldn't you be up here arguing the district court abuses discretion? Well, I would be up here arguing that eBay isn't applicable in any event, as I did here, because it did not even mention this evisceration of the presumption of irreparable harm. I'm going to assume you were wrong on that point. I mean, you would resist any consideration of eBay at all, at any stage in the proceedings post the issuance of our mandate? Yes, sir. Regardless of how Microsoft tried to raise it, one way or the other? Yes, I would. But I think the difference is that they waived this. They didn't preserve it properly, and I think that in view of the court's very pointed questions to Mr. McCallum during the first appeal, are you raising that issue here? And they say, no, I'm not. That that claim was cemented. I'm going to say, yeah, but I might talk about it later, downstairs. I think if you're giving full credence to what Microsoft said in front of us, it wasn't, oh, I'm aware of the issue. I'm never, ever going to raise it anywhere. It was not here, Judge Dyke. I think it was in response to Judge Dyke's question. That is correct. But we may well be talking about that case later. Right. But I don't think you can say, well, I'm going to preserve that one to see how things turn out here and bring it back to the district court. If I may quickly, then, Your Honor, I think as far as eBay goes, I have pointed out in the briefing that the presumption of irreparable harm isn't done. In your Abbott case, it's found that it still applies, at least in the preliminary injunction context, which they concede it certainly should apply. There was an irrebuttable presumption under our old law. Right. Under our old law, there was an irrebuttable presumption of irreparable harm once you found infringement. Well, there may have been. After eBay, there's a rebuttable presumption. I don't disagree with that. But, Your Honor, if you go back and look at what the district court did in the first instance and what we did, we moved on to the four-factor test. We didn't say it was irreparable. And so I think we applied what eBay is properly in the first instance. So that wouldn't have changed anything. Well, the trial judge concluded that as far as he was concerned it would have changed something. Because he said, I was deceived, if I can be so bold, by the federal circuit's law. I'm no longer subject to that. And under the new view that the Supreme Court has instructed me to take, I come out differently. Right. But again, he read it as eviscerating. Well, that was part of what he said. He also said that the balance of hardships and public interest, I think he alluded to at least one of those things. No, Your Honor, I disagree with that. He did allude to one of those factors, didn't he? I believe he alluded to them. But the balancing of those, they stayed the same. The only switch was this one. So the balance changed, he said, because now I don't have irreparable harm. And all I'm suggesting, he found the other factors the same way. There's no change from the beginning to the end. It was only on the one that he furthered. Well, this is what I have a hard time figuring my way through eBay on. Because the majority opinion says pretty clearly, and the predicate is that there has been liability. That is to say, for a permanent injunction, we're not guessing as to the likelihood of success. There is success. And then it says a plaintiff must demonstrate, not just a balancing, but must demonstrate four things. One, irreparable injury.  inadequate to compensate. And then the other two things. Right. I'm having a hard time squaring that with the continued existence of a rule that says once you've shown that you've succeeded, which, of course, is the predicate for all of the permanent injunctions, then you've magically made the first two issues go away. Well, Your Honor, it needs to be considered. Because first off, if you think of eBay, they try to do things to be consistent with copyright law. This court's own opinion in the Roper case indicates that this presumption for irreparable harm, or what you want to call it, comes out of looking at copyright and trademark cases. And that has its genesis because these intellectual property rights have, as their main focus, the right to exclude. So absent getting rid of section 154, there has to be something there. So I think that the Supreme Court's, impliedly anyway, is saying what's done in copyright is OK. And what's done in copyright includes this presumption. That one is not an irrebuttable presumption in copyright law. I agree. I agree that it should be. And what the Supreme Court didn't like about our jurisprudence was that we had said, when you deal with holy patents, like in the Holy Bible, the right to exclude is so fantastically valuable to the patentee that he is irreparably harmed forever by anyone who is found to have cheated on his holy patent. And the Supreme Court said, that's just out of whack with your ordinary jurisprudence. So you can't have an irrebuttable presumption of irreparable injury. But it still is a fourth test, right? But you can still have this presumption. So a trial judge who had applied previous law, who said, OK, infringement, therefore irreparable injury, because it's irrebuttable, that finding was wrong in the light of what the Supreme Court told us to do in eBay. But I think that you still do have a presumption of irreparable harm. And I think the Abbott case, which is going to be precedential here, says that. Well, you have to. The Supreme Court said it's still the test. So the presumption still exists out of Abbott. So I think that's what binds this court, too. Well, I think we've given you now, I think, just about exactly the same amount of time as Mr. McAuliffe had, by happenstance. So I think we're going to have to stop now. I did not hear anything, Mr. McAuliffe, that during the last argument that went to the cross appeal. So I think that there isn't any rebuttal on the cross appeal, unless you can point out something that you think. Well, I cross appealed the $0.12. So you may be referring simply to the Rule 60B motion. I didn't get a chance to bring it up. But I cross appealed the $0.12. So you did, in fact, even on the cross appeal. You cross appealed. That's right. You cross appealed on the wilfulness. On the wilfulness. Right. That's right. Of course you did. OK. I'm sorry. I got that mixed in with this. So yes, you have, I will give you, what, two minutes? Is that what you had? Yes. Thank you, Your Honor. The Rule 60B motion. I hope Your Honors will actually look at this much more closely than the district court did. I'd like to say just a few things about it. It's not based on validity, like the district court erroneously believed. We never made an argument that Claim 21 was invalid. What we argued was that when they went into re-exam, they limited the scope of their claim by disclaimers. And under this court's precedent. This argument, though, I don't think was right. No, it wasn't. That's why I didn't say it. You can argue about the $0.12, but you can't argue about an issue that wasn't raised by the appellate. I thought that was what you were going to say earlier. No, no. I don't want to foreclose you from arguing on the $0.12 if that's what you want to raise. I wasn't, but I'm happy to present the case to you in the manner it's been argued. OK. Very well. Thank you. Thank you. Thank both counsels. Case is submitted.